```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------ x
                                :
DEAVEN TUCKER,                  :
                                :
                                :
           Plaintiff,           :   Civil No. 3:20-cv-01810(AWT)
                                :
v.                              :
                                :
RAMON GORDELIS, DANIEL PAPOOSHA,:
ANTHONY BLEKIS, AVIANA MCCRAY,  :
BRANDON BROMLEY, KATHERINE      :
IOZZIA, ROBERT MARTIN, HURDLE,  :
SWEATMAN, and MUCKLE,           :
                                :
                                :
           Defendants.          :
------------------------------ x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Deaven Tucker was at all relevant times an inmate in the custody of the State of Connecticut Department of Correction ("DOC"). He initiated this action by filing a pro se complaint pursuant to 42 U.S.C. § 1983 against DOC officials Captain Gordelis, Correctional Officer Blekis, Captain Papousha, Captain Hurdle, Correctional Treatment Officer McCray, Correctional Officer Bromley, Property Officer Sweatman, Property Officer Muckle, Counselor Supervisor Iozzia, and Warden Robert Martin. The claims in the plaintiff's complaint arise from the defendants' alleged retaliation against the plaintiff for refusing to act as an informant, deliberate indifference to the plaintiff's safety, interference with the plaintiff's

-1-

ability to communicate with his attorney and taking of the plaintiff's property.

On June 6, 2021 the court dismissed the plaintiff's retaliation claim based on placement in segregation for complaining about loss of property, the claim against defendant Hurdle, the property claims against defendants Sweatman and Muckle, and all claims for damages against the defendants in their official capacities. See Initial Review Order (ECF No. 23).

On January 24, 2022, pro bono counsel was appointed and shortly thereafter counsel filed the Amended Complaint. The current claims are as follows: Count One, First Amendment retaliation in violation of 42 U.S.C. § 1983 against defendants Papoosha, Gordelis and Blekis; Count Two, Eighth Amendment deliberate indifference to safety in violation of 42 U.S.C. § 1983 against defendants Papoosha, Gordelis, Blekis, McCray and Bromley; Count Three, violation of First Amendment and Sixth Amendment right to counsel in violation of 42 U.S.C. § 1983 against defendants Iozzia and Martin[1]; and Count Four, First Amendment retaliation in violation of 42 U.S.C. § 1983 against defendant Martin.

---

[1] Because the plaintiff is alleging interference with his ability to communicate with his attorney, the court construes this claim as a claim of denial of the plaintiff's First Amendment right to access the courts.

-2-

All remaining defendants have moved for summary judgment. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

**I. LEGAL STANDARD**

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters v. Simon, 310 F.3d 280, 286 (2d Cir 2002). An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it would "affect the outcome of the suit under the governing law." Id.

When ruling on a motion for summary judgment, the court must respect the province of the jury, and therefore may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477

All remaining defendants have moved for summary judgment. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

**I. LEGAL STANDARD**

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters v. Simon, 310 F.3d 280, 286 (2d Cir 2002). An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it would "affect the outcome of the suit under the governing law." Id.

When ruling on a motion for summary judgment, the court must respect the province of the jury, and therefore may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994) ("[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."). In determining whether a genuine issue of material fact exists, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [his] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (ellipsis in original) (quoting Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 177 (2d Cir. 1990)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 242 (2d Cir. 2004). Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). If the evidence submitted in support of the summary

judgment motion does not meet the movant's initial burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." Id. (internal quotation marks and emphasis omitted); see also Giannullo v. City of N.Y., 322 F.3d 139, 141 (2d Cir. 2003) (the "non-movant is not required to rebut an insufficient showing"). However, Federal Rule of Civil Procedure 56(e) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may, inter alia, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it."

**II. FACTS**

The relevant facts are taken from the defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1"), (ECF No. 65-2), and Exhibits A through H (ECF Nos. 65-3 to 65-65-10). The plaintiff has not filed a Local Rule 56(a)2 Statement. Because no opposition to the defendants' motion has been filed and the evidence supports them, the court considers the facts asserted in their Rule 56(a)1 Statement of Facts admitted. See Fed. R. Civ. P. 56(e)(2).

From April 11, 2019 to July 20, 2020, the plaintiff was housed at the Garner Correctional Institution ("Garner"). Shortly after arriving at Garner, the plaintiff "reached out to

[DOC] intelligence staff indicating he had information regarding contraband and other improper activity or wanted to discuss providing information on an ongoing basis." Defs.' L.R. 56(a)1 ¶ 27. Around January 2020 "the plaintiff specifically requested a meeting with Capt. Papoosha and others including [Officer Blekis] to discuss information he wanted to provide." Id. ¶ 28. "DOC intelligence staff did not initiate this meeting." Id. At the meeting, the plaintiff also provided information regarding alleged issues he was having with an inmate named Jimenez. The plaintiff "was very evasive about what the issues were [with Jimenez] and at no point did he indicate he feared for his safety." Id. ¶ 29. "Due to the lack of information from the plaintiff," no Special Management Profile was generated between the plaintiff and Jimenez, but "Jimenez was moved to a different block." Id. ¶ 31.

On July 3, 2020 the plaintiff was involved in a multi-inmate fight and placed in segregation. The plaintiff alleges in the Amended Complaint that while he was in segregation Gordelis, Blekis, and another officer approached him seeking information about correctional staff bringing contraband into the facility. The plaintiff further alleges that Gordelis and Blekis did not believe the plaintiff's statement that "he was not involved in that activity and could provide no assistance" and "told him he had one week to think about changing his story, and that if he

-6-

did not, Gordelis would stop protecting him." Am. Compl. (ECF No. 58) at 3.[2] However, it was the plaintiff who had requested to speak with DOC intelligence staff, and "[i]ntelligence staff did not initiate discussions with the plaintiff, nor did they demand the plaintiff provide any information." Defs.' L.R. 56(a)1 ¶ 34.

On July 9, 2020, the plaintiff was released from segregation and escorted to Alpha Block. The plaintiff was released to Alpha Block because he had requested to remain at Garner "and, as he was already in a fight in Echo Block which is the other General Population block at Garner, the only option was to place him in Alpha Block." Id. at ¶ 46. The plaintiff alleges that he informed McCray, the escorting officer, that he had "a Special Management Profile with an inmate in Alpha Unit" but McCray refused to investigate and indicated that Gordelis had ordered the plaintiff's move to Alpha Block. Am. Compl. at 3. But at the time, Gordelis had no knowledge that the plaintiff had any issues with Jimenez nor had the plaintiff indicated to him "in any way that he was worried about going to Alpha Block or that he feared for his safety due to . . . Jimenez." Defs.' L.R. 56(a)1 ¶ 45.

At approximately 5:01 p.m., Jimenez approached the plaintiff in Alpha Block and "engaged him in a physical

---

[2] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

-7-

altercation by grabbing him." Defs. Ex. H (ECF No. 65-10), Incident Report at 5; see also Defs.' L.R. 56(a)1 ¶ 36 ("When plaintiff was released from segregation and placed in Alpha Block, he was involved in an incident with inmate Jimenez."). "After the incident with inmate Jimenez the plaintiff again requested to speak to intelligence staff regarding improper activity." Defs.' L.R. 56(a)1 ¶ 48.

On July 20, 2020 the plaintiff was transferred to Corrigan Correctional Center ("Corrigan"). The plaintiff alleges in the Amended Complaint that Corrigan staff members Iozzia, the Counselor Supervisor, and Martin, the Warden, "denied Plaintiff all access to his attorney." Am. Compl. at 13. Around November 2020, Martin and Iozzia were each informed by the security division that the "plaintiff's counsel (Alisha Mathers) was not allowed to communicate with inmates via in person visits or phone calls." Defs.' L.R. 56(a)1 ¶¶ 50, 58. The plaintiff was informed on at least two occasions by letter that he could still contact his attorney via legal mail. Martin never told the plaintiff that he was prohibited from contacting his attorney. Iozzia informed his/her staff about the information from the security division but did not instruct them to issue disciplinary reports if the plaintiff or other inmates were to attempt to contact counsel. See id. ¶¶ 60-61.

On May 13, 2021 the plaintiff was transferred out of Corrigan. The plaintiff alleges in the Amended Complaint that "Martin ordered Plaintiff's transfer in retaliation for the foregoing protected conduct, i.e., failing to serve as an informant, filing of grievances and filing of the instant lawsuit." Am. Compl. at 13. But Martin did not participate in the decision process with respect to the plaintiff's transfer, nor was he "aware of any other civil complaints filed by the plaintiff or grievances he may have filed." Defs.' L.R. 56(a)1 ¶ 54.

There is no record of any grievance filed by the plaintiff while he was incarcerated at Garner or Corrigan.

## III. DISCUSSION

The defendants contend that they are entitled to summary judgment for three reasons. First, they argue the plaintiff has failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); second, they argue that the plaintiff cannot establish the requisite elements of his First, Sixth, and Eight Amendment claims; and third, they argue that all defendants are entitled to qualified immunity.

Because there is not a genuine issue as to the fact that the plaintiff failed to exhaust his available administrative

remedies, the court does not reach the defendants' second and third arguments.

### A. The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all administrative remedies prior to filing a federal lawsuit regarding prison conditions. See 42 US.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). The exhaustion requirement of Section 1997e(a) "applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), "even where the relief sought . . . cannot be granted by the administrative process." Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, to satisfy the exhaustion requirement, an inmate must avail themselves of "all steps that the [prison-grievance system] holds out, and do[] so properly." Woodford, 548 U.S. at 90 (internal quotation marks and citation omitted).

The administrative remedies for the DOC are set forth in Administrative Directive 9.6 ("A.D. 9.6"). The defendants submitted the version of A.D. 9.6 that was in effect at the times relevant to the Amended Complaint. See Defs.' Ex. B (ECF No. 65-4) at 8-21.

Under this version of A.D. 9.6, prior to filing a grievance, an aggrieved inmate is required to first seek informal resolution of his issues, initially verbally, and then if unsuccessful, in writing, via a CN 9601 Inmate Request Form. See id. at 12, 9.6(6)(A). Correctional staff are required to respond to an Inmate Request Form within fifteen business days of receipt. See id.

If an inmate does not receive a response to the written request within fifteen business days or if the inmate is not satisfied with the response to his request, the inmate can file a Level 1 Grievance via a CN 9602, Inmate Administrative Remedy Form. See id. at 13, 9.6(6)(C). The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and the inmate must attach his CN 9601 Inmate Request Form containing the appropriate staff member's response or explain why the form is not attached. See id. The Unit Administrator must respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the grievance. See id. at 14, 9.6(6)(I).

The grievance can be returned without disposition, rejected, denied, compromised, upheld, or withdrawn. See id.

After that, an inmate can appeal the decision on the Level 1 Grievance by filing a Level 2 Appeal within either 5 calendar days of the receipt of the decision with respect to the Level 1 Grievance, or within sixty-five days of the date of the filing of the Level 1 Grievance if the inmate does not receive a timely response to the Level 1 Grievance. See id. at 14-15, 9.6(6)(K), (M). A Level 2 Grievance filed by an inmate confined in a Connecticut correctional facility is reviewed by the appropriate District Administrator, and a Level 2 Grievance filed by an inmate housed out-of-state is reviewed by the Director of Sentence Calculation and Interstate Management. See id. at 14, 9.6(6)(K)(1)-(2). A Level 2 Grievance reviewer must respond in writing within thirty days of receiving the Level 2 Grievance. See id. at 14, 9.6(6)(K). The response must include a statement of the remedy for a grievance, which is upheld or compromised, or a statement of the reason a grievance is denied or rejected. See id. In certain circumstances, an inmate may also appeal the District Administrator's disposition of his Level 2 Grievance by way of a Level 3 Grievance, which is reviewed by the Commissioner of the DOC or his designee. See id. at 14, 9.6(6)(L).

"If a grievance is filed at one facility, but concerns a matter complained of and occurring at another facility, that grievance is put in a grievance tracker." Defs.' L.R. 56(a)1 ¶ 22. "The grievance is then sent to the prior facility for logging, investigation, and disposition." Id. ¶ 23. "Once received, the prior facility will put it in their log and investigates the claims." Id. ¶ 24. "After an investigation is completed and a disposition is determined, it is sent back to the facility that received the grievance to return to the inmate." Id. ¶ 25.

An inmate's failure to exhaust administrative remedies is only excusable if the administrative remedies were not truly "available," i.e. the administrative remedy is "officially on the books" but not truly available in practice. Ross v. Blake, 578 U.S. 632, 643 (2016). The U.S. Supreme Court has identified three circumstances in which an administrative remedy is considered to be unavailable:

> [1.] when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;
> [2. when a procedure is] so opaque that it becomes, practically speaking, incapable of use; [or]
> [3.] when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.[3]

---

[3] "The three circumstances discussed in Ross do not appear to be exhaustive[.]" Williams v. Priatno, 829 F.3d 118, 123 n.2 (2d Cir. 2016). However, "[i]n considering the issue of availability . . . the Court is

-13-

Id. at 643-644.

Because "failure to exhaust is an affirmative defense," Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009), it is the defendants' burden to prove that an inmate did not exhaust his claim prior to filing the action in court, see e.g., Williams v. Priatno, 829 F.3d 118, 126 (2d Cir. 2016); Mago v. Finnucan, 2023 WL 4850673, at *2 (D. Conn. July 28, 2023). "Once this burden is met, the plaintiff must show that he did exhaust his administrative remedies or that the administrative remedy is not available in practice." Wright v. Snyder, 2023 WL 6379451, at *3 (D. Conn. September 30, 2023); see also Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

## B. **The Plaintiff Failed to Exhaust Available Administrative Remedies**

The defendants have produced evidence establishing that the plaintiff failed to exhaust his administrative remedies. Declarations from Correctional Counselor Trainee Guaman, the

---

[still] guided by these illustrations." Smith v. Perez, 2023 U.S. Dist. LEXIS 121258, 17 (D. Conn. Jul. 14, 2023).

facility grievance coordinator at Garner, and Correctional Counselor Jacaruso, the administrative remedies coordinator at Corrigan, show the plaintiff did not file any grievances with respect to any of his four claims.

As a part of their duties, Guaman and Jacaruso have access to, and are responsible for keeping, records of all inmate grievances and grievance appeals at their respective facilities. Guaman avers s/he conducted a review of Garner's grievance records for any administrative remedies filed by the plaintiff between April 11, 2019 and July 20, 2020 and that review showed that "the only administrative remedy filed by the plaintiff while he was housed at the Garner facility" was "a Lost/Damaged Property Investigation Request." Defs.' Ex. C, Decl. of Correctional Counselor Trainee Guaman (ECF No. 65-5), ¶¶ 18-20. Guaman also avers that "[t]here are no records indicating that the plaintiff filed a grievance at the Corrigan facility that was then returned to the Garner facility for investigation." Id. ¶ 27. Jacaruso avers that s/he conducted a similar review of Corrigan's grievance records for the period of July 20, 2020 to May 13, 2021, and did "not find any grievance documents pursuant to AD 9.6 filed by the plaintiff." Defs.' Ex. B, Decl. of Correctional Counselor Jacaruso, ¶¶ 18-20.

Accordingly, the defendants have met their initial burden of proving that the plaintiff did not exhaust his administrative

remedies, so to survive summary judgment, the plaintiff must show that a genuine issue exists as to whether he exhausted, or was excused from exhausting, his administrative remedies. The plaintiff has not done so.

Despite the allegation in the Amended Complaint that he "has exhausted all available administrative remedies," Am. Compl. at 1, the record contains only one instance of the plaintiff utilizing administrative remedies with respect to a claim at issue. Attached to the Declaration of Warden Martin (ECF No. 65-8) are two letters addressed to the plaintiff identifying the methods by which he could communicate with his attorney. See Defs.' Ex. F at 6-7. The first letter states that it is "in response to your inmate request regarding your Attorney," indicating that the plaintiff had sought informal resolution via an Inmate Request Form with respect to his claim for "right to counsel." Id. at 6; see also id. at 7 ("This letter is to notify you that this office received your request regarding Attorney Alisha Mathers."). However, as detailed above, attempting informal resolution alone is insufficient to exhaust administrative remedies because it constitutes only the initial step in the inmate grievance process set forth in A.D. 9.6. See Defs.' Ex. B at 12-16, 9.6(6).

Similarly, the unsupported allegation in the Amended Complaint that the plaintiff "attempted to file multiple

grievances concerning retaliation, indifference to safety, and violation of his right to counsel, but his correspondences were ignored," Am. Compl. at 7, is insufficient to prevent summary judgment. See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment nonmoving parties . . . may not rely on conclusory allegations or unsubstantiated speculation . . . [they] must offer some hard evidence showing that [their] version of the events is not wholly fanciful." (internal quotation marks and citations omitted)); see also Simmons v. Sheckler, 2018 WL 3596748 at * 3 (D. Conn. July 26, 2018) (granting the defendant summary judgment based on the plaintiff's failure to exhaust in spite of the plaintiff's deposition testimony that "he filed both an Inmate Request Form and a grievance," because the plaintiff "cannot rely exclusively on conclusory allegations or unsubstantiated speculation to defeat summary judgment, particularly in light of the defendant's Affidavits showing that [the plaintiff] never filed a grievance."); Romano v. Lisson, 2024 U.S. Dist. LEXIS 13819 at *32 (W.D. N.Y. Jan 24, 2024) ("[The plaintiff has] claimed that he did, in fact, exhaust his administrative remedies by filing grievances . . . but that his grievances were intentionally lost, ignored, or destroyed by prison staff. Courts in this Circuit have rejected similarly self-serving and unsupported assertions, where, like here, defendants have shown,

-17-

through admissible evidence, that there is no record of plaintiff filing a grievance.").

Moreover, even assuming arguendo that DOC staff ignored the plaintiff's grievances, summary judgment would still be appropriate because A.D. 9.6 provides a path for appealing unresponded-to-grievances to the next level. See Defs.' Ex. B at 12-13, 9.6(6)(C), (I), (L). Therefore, even if the plaintiff's grievances were ignored, he was still obligated to appeal his claim to the next level to satisfy the exhaustion requirement. See Williams, 829 F.3d at 122 ("[T]he PLRA requires proper exhaustion, which means using all steps that the [prison grievance system] holds out." (alteration in original) (internal quotation marks and citations omitted) (quoting Woodford, 548 U.S. at 90, 93)); see also Thai v. Pullen, 2022 WL 17355189, at *5 (D. Conn. Dec. 1, 2022) ("Courts have required an inmate to proceed with the next step in the grievance procedure, even in the absence of a BOP official's response to the prior step, in order to properly exhaust the available administrative remedies.").

Finally, to the extent that the plaintiff alleges in the Amended Complaint that he was threatened by DOC staff with retaliation for filing grievances, see Am. Compl. at 7, there is no evidence in support of that allegation. Nor is there any

evidence suggesting that administrative remedies were otherwise unavailable to the plaintiff.

Accordingly, as there is no genuine issue with respect to the fact that the plaintiff failed to exhaust his administrative remedies for each of the four claims in the instant action, the defendants are entitled to summary judgment.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 65) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 29th day of February 2024, at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge